United States District Court
Southern District of Texas
**ENTERED**
January 30, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TAYLOR C. GARDNER, | § | |
| Plaintiff, | § § § | |
| V. | § | CIVIL ACTION NO. H-18-0841 |
| FIELDWOOD ENERGY LLC, | § § § | |
| Defendant. | § § | |

## MEMORANDUM AND RECOMMENDATION

Pending in this case that has been referred to the undersigned Magistrate Judge is Defendant's Rule 12(b)(6) Motion to Dismiss (Document No. 3), and Plaintiff's Motion to Remand (Document No. 8). Both motions relate to, and depend on, whether Plaintiff was a seaman. Having considered the motions, the responses, the "summary judgment" type evidence submitted, and the applicable law, the Magistrate Judge concludes that the evidence does not support Plaintiff's claim to "seaman" status. Based on that conclusion, Plaintiff has not established that the case was not removable or that the Court does not have federal jurisdiction pursuant to the Outer Continental Shelf Lands Act (OCSLA) and, for the reasons set forth below, it is RECOMMENDED that Plaintiff's Motion to Remand (Document No. 8) be DENIED, and Defendant's Motion to Dismiss (Document No. 3) be GRANTED.

This case was filed by Plaintiff Taylor C. Gardner in the 269th District Court of Harris County, Texas on February 16, 2018. In the state court petition he filed, Gardner alleged that he was a "seaman" at he time he sustained injuries aboard the lift boat BULL SHARK, and asserted claims against his employer, Defendant Fieldwood Energy, LLC ("Fieldwood"), for negligence under the Jones Act, and for unseaworthiness and maintenance and cure under general maritime law.

Fieldwood timely removed the case to this Court on the basis that Gardner was not, and had fraudulently alleged to be, a seaman. Fieldwood also asserted jurisdiction based on the Outer Continental Shelf Lands Act ("OCSLA"). Fieldwood then filed its Rule 12(b)(6) Motion to Dismiss, arguing therein that because Gardner was not a seaman, he could not state a plausible Jones Act claim, an unseaworthiness claim, or a claim for maintenance and cure. Around that same time, Gardner filed his Motion to Remand, arguing that he was, under controlling Supreme Court authority (*Chandris v. Latsis*, 515 U.S. 347 (1995)), a seaman, and providing an affidavit in support of that argument. As a seaman, Gardner maintains that his general maritime claims are not removable under the "savings to suitors" clause in 28 U.S.C. § 1333(a), and that his Jones Act claim is not removable under 28 U.S.C. § 1445(a). He likewise argues, in response to Fieldwood's Motion to Dismiss, that because he was a seaman he has asserted plausible negligence claims under the Jones Act, and plausible general maritime claims for unseaworthiness and for maintenance and cure.

As both motions are primarily based the parties' differing views of whether Gardner is, or could be considered, a seaman, that issue will be resolved first. That is because if Gardner is, or can be considered, a seaman, he will have stated a plausible claim under the Jones Act and plausible general maritime claims for unseaworthiness and maintenance and cure, and those claims would not have been subject to removal. In contrast, if Gardner is not, or could not be considered, a seaman, he will not have stated plausible claims under the Jones Act or general maritime law, and the non-removal provisions of 28 U.S.C. §§ 1333(a), 1445(a) would not apply.

**Seaman Status**

The United States Supreme Court has articulated a two part test for determining whether a plaintiff employee is a "seaman" for purposes of a claim under the Jones Act: (1) "an employee's

duties must contribut[e] to the function of the vessel or to the accomplishment of its mission;" and (2) the employee "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995). An employee's duties contribute to the function of the vessel or to the accomplishment of its mission when the employee is doing "the ship's work," vis-a-vis the "navigation, maintenance or voyage" of the vessel. *Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 347 (5th Cir. 1999). An employee has a substantial connection to a vessel in navigation, both in terms of duration and nature, when he spends 30% or more of his time "in service of a single vessel or fleet of vessels." *Skinner v. Schlumberger Technology Corp.*, 655 F.App'x 188, 191-192 (5th Cir. 2016), *cert. denied*, 137 S.Ct. 647 (2017).

When seaman status is an issue in connection with the removal of a case from state court, the Court need not rely on the plaintiff's pleading allegations, but may, in a summary judgment like context, determine from the evidence whether the plaintiff meets the Supreme Court's two-part test for "seaman" status. *Hufnagel,* 182 F.3d at 345. But, it is the removing party that bears the burden of establishing jurisdiction as well as the propriety of removal. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Waddell v. Edison Chouest Offshore*, 93 F. Supp. 3d 714, 716 (S.D. Tex. 2015). In addition, as with more traditional summary judgment contexts, all disputed facts are to be resolved in the plaintiff's favor. *Hufnagel*, 182 F3d at 345. "The court may deny remand where, but only where, resolving all disputed facts and ambiguities in current substantive law in the plaintiff's favor, the court determines that the plaintiff has no reasonable probability of establishing a Jones Act claim on the merits." *Id.* at 345-46.

The evidence in the record, taken in the light most favorable to Gardner, does not support his allegation that he was a "seaman." Gardner states in his affidavit that:

> 2. On or about September 17, 2017, I was working aboard the M/V Bullshark, and I worked exclusively offshore. I lived, ate and slept offshore for my entire employment with Fieldwood Energy, LLC. On the date of the injury and for my entire hitch, I was stationed on the vessel Bullshark.
>
> 3. On September 17, 2017, my shoulder was dislocated and I suffered head and neck trauma as a result of the lack of non-skid flooring or precautionary measures in place to ensure that the floor was in a non-slippery condition. Fieldwood was managing and/or operating the Bullshark, which is part of a fleet of vessels that I worked upon, including the LB Man-O-War.
>
> 4. I was employed as a pump operator and my duties were all performed on the boat while on the LB Bullshark. My duties included, but were not limited to, operating the pump which was located on the boat, mixing and pouring cement from the deck of the boat, and cleaning and maintaining the deck and handrails of the boat as instructed by the Captain of the vessel. I was responsible for cleaning the handrails on the stairways to the living quarters, and the captain's room as well as the entire wheelhouse. I was instructed by the Captain of the Bullshark to clean and maintain portions of the vessel.
>
> 5. Prior to the injury, I was informed by my supervisors that I would be assigned to work on and from the M/V Bullshark on a permanent basis for a minimum of six months to a year, and there was a change in job description as I had previously worked on both liftboats and platforms.
>
> 6. The BullShark's purpose and mission was to decommission the well, and I worked in furtherance of that mission.
>
> 7. I reviewed the log of dates and locations worked submitted in Fieldwood's Notice of Removal and the information is incorrect. There were a number of crew change requests and the information provided is incorrect. I worked over 30% of my job on and from the water. The log provided does not include my assignment to other vessels. For example, I worked on the LB Man-O-War and it is not included in the log provided. Liftboats Man-O-War and Bullshark are part of the same fleet of ships. I provided a "Crew Change Request Form" for the vessel which is attached as Exhibit 1. I also worked on the M/V K-6 which was not identified in the log. Thus, Fieldwood's calculations are incorrect.
>
> 8. Also, Fieldwood listed my work on SP-67 A as working on a platform. The

4

only activity on the platform SP 67 A was sleeping. No work was performed SP-67 A.

(Document No. 8-2). Other than Gardner's statements that he cleaned and maintained "the deck and handrails of the boat as instructed," cleaned "the handrails on the stairways to the living quarters, and the captain's room as well as the entire wheelhouse," and cleaned and maintained "portions of the vessel," the contents of Gardner's affidavit do not support the conclusion that his duties were related to the navigation, maintenance or voyage of the vessel. In addition, Gardner's statement that he "worked over 30% of [his] job on and from the water," is conclusory, unsupported by any facts, and refuted by the time and log records submitted by Fieldwood.

As described by Michael Pham, the Decommissioning Operations Manager of Fieldwood, Gardner was not a deckhand or member of the crew who performed maintenance and cleaning of the vessel, but was, instead, part of a well decommissioning team that used the liftboat BULLSHARK as a situs of the team's operations. Pham described Gardner's role as follows:

> 5. . . . Gardner is a member of Fieldwood's Decommissioning Group and was working as a part of a plug and abandon ("P&A") operation on the well located at the Platform. Gardner was never a crewmember of LB Bull Shark, and Gardner was never on LB Bull Shark while LB Bull Shark was navigating at sea. . . .
>
> 6. . . . . The Liftboat Logs confirm that on each day that Gardner worked on LB Bull Shark – including the date of the incident – Gardner was a temporary "visitor," not a permanently assigned crewmember. The Liftboat Logs also confirm that LB Bull Shark was supporting a P&A operation.
>
> 7. Fieldwood divides its P&A equipment into several P&A "Spreads." The Platform did not have sufficient space to accommodate each P&A Spread, so liftboats (including LB Bull Shark) temporarily housed P&A Spreads at different times during the P&A operation.
>
> 8. As of the time in question, LB Bull Shark housed P&A Spread "FW4," which included a pump engine with a fixed ladder. Gardner's incident occurred on the pump-fixed ladder. The pump engine and pump-fixed ladder were one piece of

5

equipment (collectively the "pump engine"). While Gardner was attempting to descend from the operator's platform on the pump engine, he lost his footing on the second rung of the ladder and fell. . . .

9. LB Bull Shark housed the pump engine – along with other portions of the FW4 Spread – from September 2, 2017 to September 17, 2017. Prior to being on LB Bull Shark, the FW4 Spread and its pump engine were on other platforms. Fieldwood transferred the FW4 Spread – and persons assigned to the FW4 Spread – from LB Bull Shark to LB Paul roughly two months after the subject incident.

10. So while LB Bull Shark temporarily housed the pump engine at the time of the incident, the pump engine was never part of LB Bull Shark or integrated into or onto LB Bull Shark. It remained separate, movable P&A equipment as part of the "FW4" P&A Spread.

* * *

15. Gardner's presence on LB Bull Shark was solely a product of his assignment to the FW4 Spread as part of the P&A operation occurring on the platform. Gardner's orders and direction came from his on-site supervisor, not LB Bull Shark's Captain, because Gardner was not a member of LB Bull Shark's crew. To the extent that Gardner performed any cleaning or other minor duties on board LB Bull Shark (as he asserts in his Declaration), these activities would have been incidental to his P&A responsibilities, and in all respects secondary, irregular, and entirely dependent on the status and progress of the P&A operation.

Declaration of Michael Pham (Document No. 10-1) (citations and references to exhibits omitted).

Pham also explained in his Declaration, by reference to Fieldwood's business records, how it calculated the time Gardner spent working on a platform, as opposed to a lift boat, and how that time was considerably less than the 30% Gardner maintained in his own affidavit. According to Pham:

16. Gardner worked 14/7 and 14/14 hitches for Fieldwood's P&A Decommissioning Group from July 14, 2015 until the date of his incident on September 17, 2017.

17. Gardner's total dates worked (excluding travel days) and locations worked for the duration of his employment are provided below. In my previous declaration, I inadvertently categorized Gardner's work from 10/18/2016-10/25/2016, and from 11/11/2016-11/15/2016, as "platform" work when Gardner was actually performing his P&A responsibilities on LB Man-O-War. Correcting this inadvertent error adds

6

just 13 days to Gardner's time working on liftboats. Gardner was not a member of LB Man-O-War's crew during this time working on that liftboat, as is confirmed by the true and correct copies of the Liftboat Logs for LB Man-O-War attached as Appendix 5 to this Declaration. The "Crew Change Request Form" that Gardner attaches to his Declaration is a document that I use to track persons working in the Decommissioning Group. It did not reflect the LB Man-O-War's actual crewmembers.

18.     Mr. Gardner appears to represent that he worked on M/V K-6, but Fieldwood did not station P&A equipment spreads on M/V K-6, Mr. Gardner was never assigned to M/V K-6, and Mr. Gardner did not perform his job duties as a lead hand/pump operator on M/V K-6.

19.     Excluding travel days, Gardner worked a total of 427 days for Fieldwood. Gardner worked on just three liftboats during his employment with Fieldwood– (1) Spud Barge; (2) LB Bull Shark; and (3) LB Man-O-War. Excluding travel days, Gardner worked 43 days on the Spud Barge, 7 days on LB Bull Shark, and 13 days on LB Man-O-War. Gardner worked on liftboats for a total of 63 days. He worked on platforms for the remaining 364 days of his employment (excluding travel). Gardner worked 14.8% of his time on liftboats, and 85.2% of his time on platforms. Gardner was not a member of a liftboat's operating crew or on a liftboat while it was navigating at sea for a single day of his employment at Fieldwood.

* * *

20.     Gardner's claim that Fieldwood conducted no work on SP-67A Platform is incorrect. I attach true and correct copies of "Daily P&A Reports" relating to Fieldwood's work on the 67A platform work from August 10, 2017 to August 23, 2017, as Appendix 6. Those documents confirm that Decommissioning Group personnel – including Gardner – performed P&A work on the well that SP-676A served. Gardner's assertion that no work occurred on SP-67A between August 10, 2017 and August 23, 2017, is factually incorrect.

*Id.*

While Gardner's statements that he did do some cleaning of the handrails and some unspecified maintenance on unspecified portions of the vessel are to be taken as true, those statements, because they are not associated with any quantification of the time he spent on such tasks, are insufficient to raise a genuine issue of material fact on whether he "contribute[d] to the

7

function of the vessel or the accomplishment of its mission" or whether his connection to the BULLSHARK was substantial in nature and duration. Gardner's statement in his affidavit that he "worked over 30% of [his] job on and from the water," is conclusory as objected to by Fieldwood.[1] Moreover, Fieldwood has demonstrated with business records that Gardner has not since disputed, that Gardner spent 15% or less of his working time aboard a liftboat. That is far short of the 30% yardstick required for seaman status under *Chandris*.

In all, the record evidence does not support the conclusion that Gardner was a seaman. Instead, the evidence shows that Gardner performed the bulk of his work for Fieldwood on a platform, and that any tasks related to, or for, any liftboat, including any cleaning or unspecified maintenance, were incidental and not substantial. The Magistrate Judge therefore concludes from the record evidence that Gardner was not a seaman.

**Motion to Remand**

Having determined that Gardner was not a seaman, Gardner's Motion to Remand is easily resolved. While it is true that Jones Act claims are not removable under 28 U.S.C. § 1445(a), *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993), and general maritime claims are generally not removable under the "savings to suitors" provision in § 1333(a), *see Pelagidis v. Future Care, Inc.*, Civil Action No. H-17-3798, 2018 WL 2221838 *5-8 (S.D. Tex. May 15, 2018) (discussing the removability of general maritime claims following the amendment of 28 U.S.C. § 1141), the fact that Gardner is not, and cannot be considered, a seaman, render those non-removability provisions inapplicable. In addition, given the independent basis for federal

---

[1] Fieldwood's objections to that part of Gardner's affidavit, in which he states that he "worked over 30% of [his] job on and from the water" are SUSTAINED.

8

jurisdiction alleged and proven by Fieldwood in connection with its Notice of Removal, remand is unavailable.

Fieldwood removed this case from state court, asserting that Gardner had fraudulently alleged he was a seaman to avoid removal, and that the Court had federal question jurisdiction based on OCSLA. Although Gardner did not assert a claim based on OCSLA, or allege any facts in his state court petition that would have implicated the OCSLA, "the well-pleaded complaint rule does not apply to removal under OCSLA" *Pilette v, United Marine Offshore, LLC*, Civil Action No. 6:17-cv-01672, 2018 WL 2212968 (W.D. La. Apr. 26, 2018), *report and recommendation adopted*, 2018 WL 2212921 (W.D. La. May 14, 2018), and a "plaintiff does not need to expressly invoke OCSLA in order for it to apply." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013). "To determine whether a cause of action arises under OCSLA, the Fifth Circuit applies a but-for test, asking whether: (1) the facts underlying the complaint occurred on the proper situs; (2) the plaintiff's employment furthered mineral development on the OCS; and (3) the plaintiff's injury would not have occurred but for his employment." *Id.*

Fieldwood has met the requirements of this but-for test with the Declaration of Michael Pham it submitted in support of its Notice of Removal. Pham states in that Declaration that the liftboat BULLSHARK was "set in place on the sea floor on the Outer Continental Shelf ('OCS') immediately adjacent to a fixed offshore platform [ ] located approximately 30 nautical miles from Galveston," and that Gardner was employed as a member of Fieldwood's decommissioning group "and was working as a part of a plug and abandon ('P&A') operation on the well located at the platform" at the time of the injuries made the basis of this suit. (Declaration of Michael Pham (Document No. 1-5). Gardner has not challenged, in any way, this evidence on the jurisdictional

9

applicability of the OCSLA.

Based on the uncontroverted showing Fieldwood has made, the Magistrate Judge concludes that the Court has federal question jurisdiction over this case under the OCSLA. Gardner's Motion to Remand should therefore be DENIED.

**Motion to Dismiss**

Fieldwood's Rule 12(b)(6) Motion to Dismiss is predicated on Gardner's inability to maintain a Jones Act claim or general maritime claims in light of the fact that he was not, and cannot be considered, a "seaman." Because the Jones Act only applies to "seamen," *Skinner*, 655 F. App'x at 192, and because Gardner is not, as set forth above, a seaman, he has not stated a plausible Jones Act claim. *See Alexander v. Express Energy Servs. Operating, L.P.*, 784 F.3d 1032, 1037 (5th Cir. 2015) (affirming dismissal of Jones Act claims where evidence did not show that plaintiff "actually *worked on a vessel* at least 30% of the time"). With regard to Gardner's general maritime claims for unseaworthiness and maintenance and cure, those claims are also not plausible given that Gardner is not a seaman. *Lee v. Nacher Corp.*, 2019 WL 315898 at *4 (E.D. La. Jan. 24, 2019) (maintenance and cure is a general maritime claim available only to seamen); *Martin v. Fab-Con, Inc.*, 7 F. Supp.3d 645, 651 (E.D. La. Mar. 12, 2014) (where plaintiff could not establish that he was a Jones Act seaman, he could also not maintain a claim for unseaworthiness).[2] Fieldwood's Motion to

---

[2] As explained in *Martin*, 7 F.Supp.3d at 651:

> Because plaintiff is not a seaman, he is limited to a cause of action pursuant to the Longshore and Harbor Workers' Compensation Act, which applies "to maritime workers "injured upon navigable waters while in the course of [their] employment." *Bienvenu v. Texaco, Inc.,* 164 F.3d 901, 907 (5th Cir.1999); *Becker,* 335 F.3d at 386 (because "the Jones Act and the LHWCA are 'mutually exclusive compensation regimes,' " if a plaintiff is not a Jones Act seaman, "he is protected only by the LHWCA"). Workers covered by the LHWCA do not have a

Dismiss should therefore be GRANTED.

Based on the foregoing, and the conclusion that Gardner, based on the evidence presented, is not a seaman, and that the Court has jurisdiction pursuant to OCSLA, the Magistrate Judge

RECOMMENDS that Plaintiff's Motion to Remand (Document No. 8) be DENIED, and Defendant's Motion to Dismiss (Document No. 3) be GRANTED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. An*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 30th day of January, 2019.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

---

cause of action for unseaworthiness. See 33 U.S.C. § 905(b); *Becker*, 335 F.3d at 387; *Aparicio v. Swan Lake*, 643 F.2d 1109, 1116 n. 11 (5th Cir.1981) (noting that section 905(b) "abrogat[ed] the unseaworthiness remedy" for employees covered by the LHWCA).